We have only three cases for argument this morning, and I see counsel are ready. We will hear arguments in United States v. Williams. My name is Megan Hayes. I represent... You might get the mics if you can. Either you get closer to the mics or get them closer to you, up to where your voice is. There you go. Okay. Go ahead. All right. Start from the top. My name is Megan Hayes. I represent Camille Williams, who was convicted of making a false statement about the point of combat in Iraq to a Veterans Administration decision review officer. I'd like to focus first on one central issue in this case, and that is, according to the purpose of a veteran's lay testimony is to establish the link, the causal link, between his PTSD diagnosis and the in-service experience from combat or from his active duty that caused the PTSD. The government at trial and here on appeal has maintained, has failed to distinguish between the threshold evidence necessary to establish that a veteran served in combat from official military records, and on the other hand, the veteran's lay testimony that may be considered to establish that. Well, is our focus that broad? I mean, this is a criminal conviction, and the question is materiality. Is it, our question is not whether or not he should be entitled to this disability payment. That's not our question. Right? That is part of the question, because part of the materiality analysis is what was the decision the agency was trying to make. So the decision, I thought the decision, the reason that the VA brought him in and wanted to hear from him directly was the concern whether or not he had in fact served in combat. That was the question of the day. Right? That's not. Okay, how do you see it? I don't mean to disagree, but my understanding, and this is according to Judge, I'm sorry, Decision Review Officer Buckeit, and from her testimony, what the purpose of this informal hearing was to decide whether to affirm or set aside the VA's proposal to sever the service connection for Mr. Williams. And the basis of that severance was what? Hadn't they concluded and were questioning whether or not he had in fact served in combat? That's correct. Okay, so that was the issue before, you pronounce it Buckeit? Whatever, yes. The hearing officer will say. That was the question before that hearing officer. That was the focus. No, well, I'm going to disagree with that. I'm sorry. The purpose, as she said in her testimony, was to decide whether to sever the service connection. When he got up and testified about having been in combat, would it have been a proper objection? Your Honor, that's irrelevant. Yes. You think that would be a proper objection? Well, because the regulations, if you look at the specific regulation for PTSD incurred during combat, it says if, and I'll just. But it doesn't say do not go to step two until you've passed step one. I agree with you that it says what it says, but it doesn't say everything's irrelevant until you clear the first hurdle on medical evidence. It doesn't say that. Well, but it does say that the veteran's lay testimony may be used, and I'm going to quote exactly from 3.304F, if the evidence establishes, and this is where the evidence consists of service records, medical records, immunizations. The decision review officer, Buckeye, had the entire claims file. So there was nothing in there to establish that he had engaged in combat, which is why she twice questioned in the first place, why do we even need to have a hearing? What I'm going to hear from him is his lay testimony, which there's nothing in his service records to indicate that he served in combat. I guess I have a question about that. It seemed to me nothing was ever said about this regulation. She never said anything about it. Your whole point below was that she herself testified that before she even had the hearing, she basically knew that his own testimony wasn't enough. She didn't say why. She just said it wasn't enough. And you never raised this whole issue of deregulation as though that were a basis. You simply said she had made up her mind, and therefore the evidence couldn't possibly be sufficient to show materiality because it didn't matter. But you didn't rely on this regulation, and now here we are talking about this regulation. I wonder if you haven't waived this argument. Well, I don't believe I've waived the argument because it's very closely related to the exclusion of the two defense experts because defense expert Rada, if you look at his report, I'm sorry, there's a lot of- I'd like you to relate it to this argument, which is your argument about the sufficiency of the materiality. Sure. Because you made a different sufficiency argument below, and you don't seem to be making that same argument now, which is that she had made up her mind, and it wasn't possible. And you didn't say why, and she didn't say why she'd made up her mind, but that it was not possible for her to be influenced by his testimony. That's the argument you made. It's pretty simple. Yes. And you're not making that argument anymore that I see. Well, I am making that argument because I'm providing the legal framework for why she couldn't- Well, she didn't say that. She never said anything about that. I understand, but if- Somebody could have asked her about it, I suppose. Somebody could have asked her, and had defense expert Rada been allowed to testify, he would have discussed the regulatory framework, and it is in his report. She's the decision-maker, though. She's the decision-maker, and the argument was the evidence was insufficient because she simply said, I'm not going to consider this. Well, I guess I don't consider it a totally different- Okay. I understand what you're saying about the waiver, but I believe what she was saying, without using the language of the regulation, that I simply could not consider his lay testimony at this point because the evidence that was available in his claims file did not corroborate his statement that he had engaged in combat. Does combat give a higher benefit? In other words, if you have PTSD and it's just service-related as opposed to combat-related, do you get more money monthly if it's combat? Well, you're stretching the depth of my knowledge of the compensation benefits. Does it matter? I don't think it matters here. I don't know that it would have- Beyond 304F, I don't know how-if you get more for combat or it just-in service is the same. I'm sorry, I don't know the answer to that question, if he gets more in combat, because I see what you're implying is that, well, if I say I was in combat, I'd get a higher benefit. I don't think that's the case, but I don't know. Well, why does the regulation even distinguish then between combat and typical in service that's not combat? I don't know the answer to that. I don't know if there's a different payment scheme for someone who's in combat. I know that someone who has served in combat, for example, the couple of the cases I've cited, there are additional benefits that come, not disability compensation, but combat awards that come with serving in combat. Well, wouldn't it be odd if the administrative hearing, if the hearing officer were to say, I know that you've claimed that you were in combat, but I don't care about that. I don't care whether you were in combat. I'm sorry, and so your question is- Well, my question is that I think there is a distinction between in service and combat, and he had asserted that he was in combat and had gotten PTSD in that fashion, and so it seems to me it would be important for the hearing officer to delve into the combat. Well, I think the hearing officer felt she didn't want to waste her time. There was no indication from his service records that he had served in combat. The issue that the two experts, especially Westcott, would have testified to is that the deployment statement was really not material because decision review officer Buckeye was required under 304F to also look at non-combat in-service stressors that were included in his claims file. Tell me if it makes sense to you that you read this regulation in the statute to say, so long as you really don't have a condition, you get a free pass, lie all you want. Is that what everybody had in mind when this was written? Is that the effect of what your argument is? I don't believe that's the effect of my argument. I think that even the regulation pertaining to what evidence can be considered, just backing it out a step, it's 303.303A indicates that the record is supposed to contain all of the veteran's service records. So, yeah, I suppose a veteran can go in and lie all they want, but it has no bearing. If the underlying service records don't establish the conditions of the service that would have given rise to a PTSD incident. Well, you said that the hearing officer had said, well, I don't know any purpose behind this hearing because we don't have documents, but yet the hearing was held, right? Correct. And inquiry was made of your client regarding his service. Correct. And it is possible, I think we all sitting here have seen it, that there are errors in military records. So the hearing officer questioned your client and said, tell us about your history in combat, and he did, which caused her to do further research, right? Correct. And so for her to try to determine whether or not it was combat related, his statements that he served in combat and the specifics of his service were material to the actions that she took. Correct? Well, again, I think it was material in the sense that she had an obligation, hearing him, to see, even though she had everything she needed, she found nothing. Or thought she had everything. Thought she had. She had everything. She had his DD-214. She had all of his military records. He testified that he had these experiences in Iraq, and she's like, okay, I'll check again, but, you know, finding nothing. Just coming to the same conclusion as she had before the hearing, that really what you're telling me has no bearing because there are no records. I can find no records to support your statement about service in Iraq. But don't you think the fact that she heard from him, and after hearing from him and the statements that he made under oath, she took action to follow up. Wouldn't that mean his statements to her were material? Well, I don't know what exactly she did to follow up, but her decision was issued the next day. So I have no idea what she did to follow up. She had everything. She had obtained all the records. If you're going to obtain additional records from the military, they usually don't arrive within 24 hours. Yeah, for sure. So, yeah, did she follow up, or did she say, sure, that's how she testified at trial, and I'm not going to say she didn't do something. But what did she do? I have no idea how much she did, probably not much of anything, because she had everything from the claims file. What did she testify about why, if she had decided ahead of time, which she said she had, basically, that there wasn't at least an easy comment, why did she go forward with the hearing? Was she required to do so? Well, it's an informal hearing, and I think it's – Could she have made the decision without the hearing? Well, I think her testimony about these types of hearings, they're informal hearings. She usually lets the veteran come in. Sometimes they rant and rage. She lets them talk. She doesn't cut them off. It's not adversarial. It's an informal process. And perhaps it's possible that he could have come forward with something in addition to his own testimony? Well, he submitted – I'm sorry, I'm out of time. Go ahead. He submitted the buddy statement from Mr. James that was unsworn and basically said, I relieved his unit in Iraq. And he had – I mean, that doesn't even corroborate. But he could have is what I'm saying. I mean, he could have submitted something. Maybe why she had the hearing. What he did submit wasn't sufficient. Yeah, I think – well, I can't begin to speculate on why. But I think her testimony was clear. If a veteran wants to have a hearing, we'll have a hearing. She twice questioned the need for it. Like, look, guys, this is going to be a total waste of time. There's nothing in his file to indicate he served in combat. Really, do we need to have the hearing? Mr. Williams wanted to have the hearing, so she said, fine. Thank you. Thank you, counsel. Thank you. You're the first person this week to find that button.  Congratulations. May it please the court, Bishop Grewal, on behalf of the United States. I want to turn to the sufficiency evidence question first, but to a couple of your questions. In the transcripts, Volume 3, at 291 to 292, that's where the review officer is talking about, that the question really before is whether these stressors occurred in service, and she needed to establish that they occurred in service to give him the benefits. And at 331, she says, without deployment, his benefits would have gone down. And I think if you look at 3.304F2, it certainly talks about combat would change how these things are looked at. And throughout the regulations of 3.303 and 3.304, it's talking about you need to look at the circumstances surrounding it and whether these are the type of circumstances that you'd expect that stressor to be a problem for. And so obviously, if you're cleaning out blood in a Humvee stateside, that's going to be a very different situation than if you're cleaning out blood in a Humvee in a war zone. So your point is that there would be greater benefits if it's combat-related, your PTSD? If he had deployed, he would have received greater benefits. Greater benefits. Yeah, that's what the officer says at 3.31 of the record. I think this case, there's a case that we cite in our briefs, United States v. Herod, that I want to bring out a bit more because we just discussed it for the elements and the standard of review, but I think it's really on all fours with this case. And in that case, Judge Ebell was looking at another 1001 case, and it was a toy maker who had submitted false statements to the Department of Labor for unemployment benefits. And Judge Ebell was looking at the sufficiency of the evidence for materiality, and he said, this guy made these statements in his 88 form and his 89 form, and both times he continued to receive the benefits based on that. And so based on that, he said, is the 90 form material? Yes, because he'd received benefits in the past based on similar statements. Then when he makes that statement again in the future, that's material. I think that's what you have here. We have evidence that Mr. Williams is making statements that he deployed in Iraq in 2007. He's getting benefits based on that. And so when we have this hearing then to see if he's going to continue to receive benefits, and he makes a statement again here, that's sufficient evidence that the statement here is material, that it was capable of affecting a decision. She raises two. But that's more, I mean, that's the past, and it depends on whether we're looking at it objectively or subjectively, isn't it? Yes, so that would be my second point. She raises two responses, and one is this factual insufficiency argument, which is the hearing review officer saying, look, it wasn't going to affect my decision. But this court, and in the 28J I cited, the Williams case, cites a decision from the Third Circuit, McBain, for this rule, that we're really looking at this objectively. And it says that the objective materiality test focuses on, quote, the intrinsic capabilities of the statement itself rather than the possibility of the actual attainment of its end. We don't look at that. And if you look at the facts of it. I think we, but you're talking about Williams where we talked about McBain. But I think in Williams we actually then applied, if I'm thinking in the correct case, a subjective approach. When we talked about McBain, we actually applied a subjective approach. In some sense, what I think is going on here is, so Williams also talks about, well, if you actually received them before, which in some sense would be based on a subjective approach, in that situation we're going to say, well, that's evidence that it's capable. And so I think to the extent you're limiting it to an objective approach, it's in the sense that McBain was, where it said the FBI officer says, you know, we've already completed our investigation. This isn't going to affect anything. And so it's really that notion that whether it was factually going to affect the decision or not doesn't actually matter. And so I think that's where we look at it not being subjective in that sense. And I think that's all that the review officer was testifying to. And we were going to look at the facts, though, and we were going to say that objectively or subjectively, clearly this decisionmaker was not going to make any other decision than she made because she'd already made up her mind. There's no question that his false testimony wasn't material to her. The testimony is somewhat – He basically testified that. Her testimony is somewhat contradictory because she does say that at one point. At another point, it's in the record, she says that she hadn't determined before the hearing that lay testimony wouldn't be enough. This is 379 to 380, which is sort of in conflict with what she's saying in other places. She said it 379, 380 was. 379 and 380 of the record. And she does leave the – and she says before the hearing she didn't know when it was that he was claiming to be deployed. I don't recall that being at that particular point. But she says in there that she couldn't – she didn't know when he was claiming to be deployed. And if she knew that, then she would be able to look for some more records that would help narrow that down. So there is a point where she said, I don't know why I need a hearing. It wasn't going to change my mind. And then at another point she says, well, I hadn't decided before that that the lay testimony would not be enough. At the very least, even if it wouldn't be enough on its own, it certainly – if it would be enough with other stuff, that means that it's something that would be capable of affecting a decision. Well, did she do follow-up research? And was the decision issued the next day, as counsel has said? I think in the record – actually, she left – I believe, and I can file a 28-J to confirm this, but I believe she actually left it open for a little bit for them to submit other materials if they wanted to. But I will – It's easy to check the dates. We can do that as well. Thanks. The second response she makes is this different argument, which is a legal sufficiency argument. And it's the one that she didn't raise below at all. This is the one about the regulations. Because she didn't raise it below at all, I think it really should be on plain error. And part of that is if this court is going to get into the VA's regulations and interpret them in a way that's going to affect veterans' benefits for thousands upon thousands of veterans across the country, it really should have more of a record here. We probably would have brought the VA in to actually submit their view of the law and what their regulations are had this been actually brought up below. But it wasn't brought up below. Well, I guess the way I understood her argument today is that essentially, implicitly, that must have been the basis for the decision-maker's belief that she needed something more. And I guess I don't see that as necessarily implicit. I think it could support the argument that that's what the decision-maker is testifying to, which would be fine. But to then – to raise it, I think she's also trying to raise it as a legal insufficiency argument, that regardless what the testimony was or what the record was, that this simply could never be material because you couldn't rely on his lay testimony. That separate argument, I think, has to be on plain error review. And that it wouldn't be plain because, one, I don't think the regulations here do say that. They talk about looking at the record as a whole and repeatedly talk about lay evidence being evidence you can look at. But we certainly don't have a case on point saying that somehow the statement here just couldn't have been considered at all. I guess the other point that she raised, and I think was with respect to the exclusion of her experts, she suggests that Mr. Rada was somehow going to testify on the regulations and testify about this point that she wants to make now. But if you look at 379 to 383, that's Mr. Rada's report. And throughout his report, his report is really based on an assumption that Mr. Williams had in fact served. In fact, he talks about maybe the forms are wrong here. And maybe if you explore further, you'll find that he had in fact deployed. And all of his report is really based on a notion of, yeah, if you deploy, that does matter. And he even talks about how we could separate out service-connected versus not service-connected. So the fact that in no way was he going to suggest that this statement couldn't be material based on the regulations or anything else means his testimony was really irrelevant. And Dr. Westcott's testimony was even more irrelevant because all she was going to testify to was the fact that he had PTSD, which wasn't something that was in dispute in this case. The question was whether he had deployed and how that was going to affect his benefits. So her testimony was going to be relevant as well. Further into this court's Dowland decision, 408 F3rd 647, which is in our briefs at 659 to 661, this court has said when you're raising a constitutional challenge to the exclusion of the evidence, which is what she says she's raising, you need to show that the excluded evidence was material, i.e. that it would have exculpated him or created a reasonable doubt that didn't exist here. I don't think that that was the nature of the expert testimony when you look at those two reports. The final issue that she raises are these statements to the doctors that he deployed. Well, I had a question. Did you come across the Kamik, C-A-M-I-C-K, a 2015 case from this court when you were researching materiality? I didn't see you cite it in your brief. I don't recall that on your own. I'm sorry. But I do think the Herod decision from 1992 is really on all fours with our facts here, and it's obviously the earliest decision that's been cited. And you said you cited that, but did you cite it for that principle in your brief? We just cited it for the sufficiency standard and the four or five elements. So I didn't bring out the facts of that, which were this notion that continuing benefits in the past are sufficient evidence that a similar statement in the future is material. And that's all that you would require. On the statements to the other doctors that she challenges, I think these really have to be witness-specific objections in order for them to be preserved, and the reason is we don't necessarily know if this is Res Guste evidence or 404 evidence without knowing what sort of doctors these were and what they were reviewing. If it was something from the distant past, maybe it's more like 404B. But if it's something that was a review that was directly in the line that then the review officer here was reviewing, if it was the doctors denying him benefits or giving him benefits that then was part of DRO Boucher's review, that seems like it's more intrinsic. And so we need to bring that out to know. So I think it is plain error review. In some sense it doesn't matter because I don't think she can meet any of the three problems. Was an objection posed under 404B? So she raised a request for 404 notice, and then with respect to two different doctors, she sort of raised objections about that. One of those doctors didn't testify at all. The other one did testify but didn't make any of these – didn't refer to any of these statements from Mr. Williams about whether he deployed or not. And then when those who testified testified, were there objections made to their referring to these past alleged lies? There were not. Neither were there objections made to Schultz and Peters, which were the two that she's challenging on appeal. There are three that she doesn't even challenge on appeal either that have the same sort of information. Our special agent testified that that sort of statement was consistent with statements he'd made to others. On cross-examination of the hearing review officer, she brings out that these statements had been made to other people. And I believe also in the testimony of Dr. Riley, which she doesn't challenge, that same thing came out. Dr. Riley's at page 259 of Volume 3 on the record. The special agent's testimony about this is 611 to 612 of Volume 3. And DRO Boucher's cross-examination is Volume 3, page 373 and 374. I don't think these even fall under error because even if they're 404, she's challenging – she's saying, well, we're relying on a character inference and that's the problem. There's not a character inference here. Well, what you're saying, this guy's a liar. No, that's not what we're saying. We have doctors saying he was a liar. That's pretty heavy. That's not what it's being relied on for. And you could rely – you could rely on – and that would be a character inference. But this court, as it said in Hanthorne and other places, is as long as you have a permissible inference, it's OK that you could also draw a character inference from it. And the permissible inference is the very one we're trying to draw from the Herod case and others that if you made these false statements in the past and they got you benefits, that makes them material. It's showing that if you do this sort of thing, it's going to get benefits from an agency. That's what we're relying on it for, and that is not a character inference based on Mr. Williams or any other witness. And did the court limit – was there a limiting instruction? I don't believe they objected, so I don't believe there was a request. There was no suggestion that there was 404 evidence in the record that we needed a limiting instruction on. So it had to be objected to and an instruction asked for. And I think this court's precedent also says you only get – you have to give it a limiting instruction if the limiting instruction is asked for. But if we don't have a limiting instruction requested, it's not there. But you may give a limiting instruction when you're on thin ice and would like the jury to only look at proper evidence. If you think that there's a 404 question, it's hard to know if there's a 404 question if the prior stuff could, in fact, be intrinsic and no objection. I'm sort of curious why there were no additional charges for these past statements. Weren't they also 1001 violations? I don't know for certain. I suppose there may have been a statute of limitations question. I'm not aware, Your Honor. So I don't think it's erroneous to want to be erroneous under 404 or resuscitate. It's certainly not plainly erroneous. And finally, I don't think it would meet prong three either in part because of what I've already mentioned. This testimony comes in from three other witnesses that she's not challenging on appeal. That makes it cumulative, and so I don't think that she can meet the prong three burden. And also, I think it's really going somewhat to what you just raised, Judge Briscoe. I think it goes more to has he lied in the past? But that really isn't being challenged, nor was it really was this a lie? Didn't he make this statement? That's really never been challenged. It's really more was this material or not. And so I just don't think it could meet prong three for that reason. Can I ask you a quick question about the regulation itself? As we analyze 303 and 304 and various sections speak about injury or disease, including subsection D on combat, do any of those even apply to our case, or are we solely a subsection F case? I think it's solely a subsection F case, although F would, to the extent the other ones inform it, some language. But I think it's an F case because the question was really his PTSD benefits and whether he deployed in combat. And so PTSD is not an injury or a disease, basically? It has some different rules that govern it, some special rules. I'm out of time. I'm happy to answer any other questions. Thank you. Thank you. Thank you both for your arguments this morning.